UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **VANDERBILT MORTGAGE AND FINANCE, INC.** | CASE NO.: 2:26-cv-499 |
| | JUDGE: _____ |
| **VERSUS** | |
| | MAGISTRATE |
| **JCHR LAND, LLC,** | JUDGE: _____ |
| **JCHR HOMES, LLC,** | |
| **WILLIAM RODWELL,** | |
| **and ROBERT HUTSON** | |

### ORDER OF APPOINTMENT OF RECEIVER

The Plaintiff, Vanderbilt Mortgage and Finance, Inc., filed its *Ex Parte Emergency Motion for Appointment of a Receiver* in this case (the "Motion"). The Court grants the Motion.

The property subject to the Motion and this Order is all right, title, and interest, including leasehold interests, of JCHR Land, LLC and JCHR Homes, LLC (the "Mortgagors"), in (1) immovable property, the legal description of which is set forth on **Exhibit A** attached hereto, together with the improvements thereon, (2) all income derived from such immovable property, (3) all movable property, both tangible and intangible, of Mortgagors, and all other assets of Mortgagors (all of which, collectively, is referred to in this Order as the "Property").

Included in the Property is a manufactured home community located at 8511 Gulf Highway, Lake Charles, LA 70607, commonly referred to as the Haven MHC ("the Haven"). The Haven is owned and operated as a manufactured home community with approximately 149 homes with various tenants.

The Court, being fully advised, having fully considered the matter, for good cause shown, hereby finds and orders as follows, with all such orders pertaining to the rights of the Mortgagors in the Property:

(a) **M. Shapiro Management Company, LLC** (hereinafter referred to as the "Receiver" or "M. Shapiro"), is hereby appointed as the receiver to take possession of and administer all of Mortgagors' rights with respect to the Property. Receiver possesses the necessary qualifications to serve as Receiver in this matter, and is not an attorney or related to any party to this action.

(b) Effective immediately, the Receiver is authorized to take and have complete and exclusive control, possession, and custody of all of Mortgagors' right, title, and interest in the Property.

(c) Effective immediately, the Receiver is authorized to take any and all actions the Receiver deems reasonable and appropriate to preserve, secure, manage, maintain, and safeguard Mortgagors' interests in the Property.

(d) The Mortgagors may have payment obligations that are critical to the operation and maintenance of the Property. The Receiver is authorized (but not obligated) to enter into further lending transactions by which Plaintiff may, but has no obligation to, lend monies to the Receiver (on a nonrecourse basis as to Receiver) to enable the Receiver to perform its duties hereunder, to protect and preserve Mortgagors' interest in the Property, and to perform Mortgagors' payment obligations, all in the Receiver's discretion and in consultation with Plaintiff, in which case any monies loaned shall be, without need of further action on the part of the Receiver or Plaintiff, secured by a first and prior lien and security interest on the Property in favor of Plaintiff, pursuant to the Plaintiff's existing Loan Documents.

(e) Effective immediately, Mortgagors shall deliver to the Receiver any portion of the Property that is in the possession or control of the Mortgagors, without any right of offset or recoupment, including: (1) books, records, and files with respect thereto; (2) cash and any

accountings of thereof; (3) documents pertaining to any ongoing litigation; (4) documents pertinent to any licenses maintained in connection with the Property, and all documents pertinent thereto; (5) contracts and agreements entered into in connection with the Property, and all documents pertinent thereto; (6) documents pertaining to any property tax appeals, tax refunds, or insurance claims; (7) Mortgagors' FEIN; and (8) other records pertaining to the Property.

(f) Effective immediately, Mortgagors and all persons acting under their direction are enjoined from in any manner disturbing the Receiver's possession of Mortgagors' interests in the Property and are prohibited and restrained from disposing of, dissipating, mishandling, or misappropriating any of Mortgagors' interests in the Property, and are prohibited and restrained from collecting any monies that may be payable to Mortgagors.

(g) The Receiver shall have access to the Property to the same extent and right of Mortgagors, and shall allow Plaintiff and its agents like access to the Property.

(h) The Receiver may market and, upon further Court order, sell the Property to the extent permitted by applicable law.

(i) The Receiver is authorized to make any payments and disbursements, in the ordinary course of business, that would otherwise be made by the Mortgagors as may be needed and proper for the preservation of the Property. Notwithstanding, the Receiver shall not be liable for pre-Receivership debts.

(j) The Receiver is authorized to contest, protest, or appeal any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Property. (Any refund or reimbursement of taxes whether paid by the Receiver or the Mortgagors shall be deemed income to be applied as provided herein.) The Receiver is specifically authorized

to substitute as the party in interest in any pending action or appeal of the assessed valuation of the Receivership Property and prosecute such action or appeal in its name or the name of Mortgagors.

(k) The Receiver is authorized to engage or otherwise employ and pay attorneys, accountants, other professionals, managing agents, and any other persons, firms, or corporations, as Receiver may in its discretion deem appropriate or desirable to implement and effectuate the rights and powers granted herein.

(l) The Receiver is authorized to enforce, reject, modify, terminate any leases or unexpired contracts of the Mortgagors that are burdensome on the Receivership estate, with no further obligation or liability, including the liability to pay any termination fee under such terminated contract.

(m) The Receiver is authorized to continue any current insurance policies of the Mortgagors in place and is authorized to purchase further insurance as the Receiver deems appropriate. In addition, all insurance companies shall make the required changes to named insureds, additional insureds, and loss payees, as applicable, at no further cost as the Receiver may designate, in its sole discretion. Without limiting the foregoing, the Receiver may terminate all insurance and obtain new replacement policies (in amounts and on terms consistent with the Plaintiff's mortgage). All refunds delivered to the Receiver on account of any insurance policies shall constitute Receivership Property and shall be subject to Plaintiff's liens and security interests under the Loan Documents. The Receiver shall add the Plaintiff as mortgagee insured and loss payee under any and all property insurance policies obtained by the Receiver and as additional insured under any and all casualty insurance policies obtained by the Receiver. The Receiver shall add Mortgagors as additional insured where appropriate under any and all insurance policies

obtained by the Receiver. The Receiver shall be an additional named insured on all applicable policies that are obtained/maintained by the Mortgagors in relation to the Property.

(n) The Receiver is authorized to take possession and control of all of Mortgagors' rights under licenses, permits, or other government-issued documents necessary for the continued operation of the Property, to the extent permitted by applicable law. This shall include licenses or permits even if the license/permit is not issued in the names of the Mortgagors. If the issuing agency requires that the Receiver apply for new license, permit, or other document, then, to the extent permitted under applicable law, the Receiver shall be allowed to continue to operate under the current permit until the new one is issued to ensure no disruption of service occurs to the extent permitted by applicable law.

(o) All utility providers, including but not limited to providers of electricity, natural gas, water, sewer, wastewater, trash removal, internet, and telecommunications services to the Property, are hereby directed to maintain and continue utility services to the Property without interruption. No utility provider shall alter, refuse, or discontinue service to the Property on account of any outstanding pre-receivership arrearage or unpaid bill of the Mortgagors. The Receiver shall be responsible for payment of utility services incurred from and after the date of this Order in the ordinary course of business, but shall have no obligation or liability for unpaid utility charges that accrued prior to the date of this Order. The Mortgagors' pre-receivership utility obligations shall remain the obligations of the Mortgagors and are not assumed by the Receiver or the Receivership estate.

(p) The Receiver is not required to prepare and file tax returns with respect to the Property, and the Receiver is not responsible for the preparation of any tax returns for the Mortgagors.

Receiver shall have no obligation to pay pre-receivership debts, obligations, or taxes of Mortgagors.

(q) The Receiver is authorized to, in its discretion, institute, prosecute, defend, compromise and/or intervene in or become a party to such actions or proceedings in state or federal courts which may in the Receiver's opinion be necessary for the protection, maintenance and preservation of Mortgagors' interests in the Property, or for the carrying out of the terms of any order of the Court affecting the Property, and to in its discretion defend against any action brought against Mortgagors. The Receiver is authorized to hire legal counsel and to pay its counsel reasonable fees to represent the Receiver in matters related to the Receivership and the Property.

(r) The Receiver is authorized to issue demands in the name of the Receivership upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as may have been used by Mortgagors and/or their agents for the receipt of rent, income, and other mail related to the Property. Receiver is authorized to open all mail addressed to Mortgagors, their agents, employees or representatives, or all persons or entities acting under or in concert with Mortgagors or their management company and received at the Property. Receiver is authorized to make copies of such received mail and then forward the mail to Mortgagors, their agents, employees, or representatives, or all persons or entities acting under or in concert with Mortgagors.

(s) The Receiver is directed to file with the Court and serve on parties of record, within 60 days of entry of the order of the Court, and not less than quarterly thereafter, and within 60 days after termination of the Receiver's appointment, full and complete reports, under oath, detailing receipts, disbursements, and transactions affecting the Property and that, at the option of Lender, such reports may be submitted to the Clerk of the Court under seal and shall not be available for

public inspection without further order of the Court. The Receiver is also directed to provide Plaintiff with monthly interim reports beginning within 30 days of entry of the order of the Court. Upon termination of the Receiver, in consideration of Receiver's preparation of a final accounting, Receiver shall receive a one-time wind-down fee equal to one months' Management Fee. Further, upon termination, the Receiver shall have the authority to retain sufficient funds to pay its final bills and expenses.

(t) The Receiver is not required to post a surety bond.

(u) No person or entity may file suit against the Receiver, in its capacity as Receiver, unless otherwise authorized in advance by this Court.

(v) The Receiver, and those agents acting under Receiver's control, shall have no personal liability in connection with any obligations owed by the Mortgagors to their creditors, and no creditor of the Mortgagors, other than Plaintiff, shall have the right to seize or attempt to seize any of the Property delivered to the Receiver hereunder.

(w) The Receiver, and those agents and any property manager acting under Receiver's control, shall have no personal liability in connection with their conduct in the course of this receivership, except for claims due to their gross negligence, gross or willful misconduct, or malicious acts. The costs associated with any and all claims brought against the Receiver, except in the event of gross negligence, shall be an operating expense including insurance premiums, deductibles, retentions, costs, expenses, attorneys' fees, and settlement costs.

(x) The Receiver may be removed upon 15 days' written notice by Plaintiff that Plaintiff desires such removal, with a copy of such notice lodged with the Court, or upon an order of the Court, in which event the Court shall appoint a substitute Receiver to be recommended by Plaintiff. Further, in the event of a sale of the Loan Documents or control over the Loan Documents is

transferred to a party unaffiliated with Plaintiff, then the Receiver may withdraw as Receiver upon fourteen (14) days' written notice to the Parties and this Court. Moreover, this Receivership shall terminate six months from the date of the entry of this Order, at the option of Plaintiff, by the filing of a Notice of Termination with the Court. After such termination, VMF will be authorized to name M. Shapiro, and M. Shapiro hereby consents to be named as a nominal party in any foreclosure action VMF chooses to file in Louisiana state or federal court as to the Receivership Property.

(y) Nothing contained in this Order shall be construed as obligating the Receiver to advance its own funds in order to pay the costs and expenses of the Receivership that have been approved by the Plaintiff and the Court.

(z) The Receiver may apply at any time to the Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill its duties.

(aa) The Receiver shall be compensated without diminishment of VMF's claims and at the sole cost of VMF, if necessary, at the following rates

- A management fee equal to Five Percent (5%) of Gross Receipts or $2,750.00, whichever is greater, per month;
- A set-up fee equal to the first full month's management fee;
- Travel expenses to be billed and reimbursed at cost with no mark-up;
- No fee for senior corporate management visits to the Property;
- An hourly receiver fee of $195 per hour to coordinate normal receivership services (such as filing receivership reports with the court, interaction with the defendant, etc.);
- A construction management fee of $0.00 for the first $50,000.00 in construction costs; three percent (3%) of all construction costs between

    $50,000.00 and $100,000.00 and two percent (2%) of all construction costs for projects in excess of $100,000.00;

-  A transition fee equal to one (1) full month's management fees upon the sale or transfer of management of the Property;

  The Receiver further has the right to receive reimbursement of reasonable out-of-pocket expenses of the Receiver. In the event there are insufficient funds from the operation of the Property to pay all amounts due to the Receiver or other agent or contractor engaged by the Receiver, VMF shall fund such amounts due to Receiver or other agent or contractor engaged by the Receiver.

  (bb) The entry of this Order shall not in any manner prejudice any of the other rights and remedies of Plaintiff under its Loan Documents or under applicable law, any of which may be exercised by Plaintiff without the need for Plaintiff to apply to this Court to request authorization to exercise the same, and without the need of any further order of or leave granted by the Court.

  (cc) The entry of this Order shall not in any manner preclude any consensual resolution that may be reached between Plaintiff and Mortgagors, and the Receiver shall abide by the terms of any such consensual resolution.

  (dd) Plaintiff shall not become a mortgagee in possession as a result of this Order.

February 19th, 2026

_____
The Honorable James D. Cain, Jr.
United States District Court
Western District of Louisiana, Lake Charles Division

- 9 -

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**VANDERBILT MORTGAGE AND FINANCE, INC.**

**VERSUS**

**JCHR LAND, LLC,
JCHR HOMES, LLC,
WILLIAM RODWELL,
and ROBERT HUTSON**

CASE NO.: 2:26-cv-499

JUDGE: _____

MAGISTRATE JUDGE: _____

## EXHIBIT A

Legal Description

THAT CERTAIN TRACT OR PARCEL OF LAND BEING A PORTION OF THE NORTH HALF OF THE NORTH HALF OF THE NORTHWEST QUARTER (N/2 OF N/2 OF NW/4) OF SECTION 20, TOWNSHIP ELEVEN (11) SOUTH, RANGE EIGHT (8) WEST, CALCASIEU PARISH, LOUISIANA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF THE NORTH HALF OF THE NORTH HALF OF THE NORTHWEST QUARTER (N/2 OF N/2 OF NW/4) OF SECTION 20, TOWNSHIP ELEVEN (11) SOUTH, RANGE EIGHT (8) WEST, CALCASIEU PARISH, LOUISIANA;

THENCE SOUTH 89° 50' 38" EAST, ALONG THE NORTH LINE OF SAID NORTH HALF OF THE NORTH HALF OF THE NORTHWEST QUARTER (N/2 OF N/2 OF NW/4), FOR A DISTANCE OF 1689.10 FEET TO THE INTERSECTION WITH A NORTHERLY PROJECTION OF THE WEST LINE OF A TRACT OF LAND EITHER NOW OR FORMERLY OWNED BY CHERYL LYNN LANGLEY LAFLEUR;

THENCE SOUTH 00° 43' 22" WEST, ALONG SAID NORTHERLY PROJECTION AND THE WEST LINE OF SAID CHERYL LYNN LANGLEY LAFLEUR TRACT, FOR A DISTANCE OF 663.63 FEET TO THE SOUTHWEST CORNER OF SAID CHERYL LYNN LANGLEY LAFLEUR TRACT, ALSO BEING ON THE SOUTH LINE OF THE AFORESAID NORTH HALF OF THE NORTH HALF OF THE NORTHWEST QUARTER (N/2 OF N/2 OF NW/4);

THENCE NORTH 89° 50' 38" WEST, ALONG SAID SOUTH LINE OF THE NORTH HALF OF THE NORTH HALF OF THE NORTHWEST QUARTER (N/2 OF N/2 OF NW/4), FOR A DISTANCE OF 1689.49 FEET TO THE SOUTHWEST CORNER OF SAID NORTH HALF OF THE NORTH HALF OF THE NORTHWEST QUARTER (N/2 OF N/2 OF NW/4);

THENCE NORTH 00° 45' 22" EAST, ALONG THE WEST LINE OF SAID NORTH HALF OF THE NORTH HALF OF THE NORTHWEST QUARTER (N/2 OF N/2 OF NW/4), FOR A DISTANCE OF 663.63 FEET TO THE POINT OF BEGINNING.

HEREIN DESCRIBED TRACT CONTAINING 1,121,008.76 SQUARE FEET OR 25.735 ACRES, MORE OR LESS, SUBJECT TO A 40.0 FOOT RIGHT-OF-WAY ACROSS THE WEST SIDE THEREOF FOR HIGHWAY 385 (GULF HIGHWAY), A 50.0 FOOT RIGHT-OF-WAY FOR THE EAST FRED VAIL ROAD PROJECT ACROSS THE NORTH SIDE THEREOF, AND ANY EASEMENTS, SERVITUDES OR RIGHTS-OF-WAY OF RECORD OR BY USE.